UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES BLALOCK, | No. 2:17-cv-1813 TLN AC P |
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATIONS |
| J. CLARK KELSO, et al., | |
| Defendants. | |

     Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is Defendant's motion for summary judgment. ECF No. 45.

I.     Procedural History

     On screening, the undersigned found that the complaint stated cognizable Eighth Amendment claims against Defendants Miranda and Gideon, but failed to state a viable retaliation claim against Miranda and did not state any claims against Defendants Kelso and Spearman. ECF No. 13. Plaintiff was given the option to amend his complaint or to proceed on the complaint as screened, id. at 9, and chose to proceed on the complaint as screened, ECF No. 16. Defendant Gideon was later dismissed. ECF No. 36. Following the close of discovery, Defendant Miranda filed the instant motion for summary judgement, ECF No. 45, which Plaintiff opposes, ECF No. 48.

II.     Plaintiff's Allegations

The complaint alleges that upon arrival at High Desert State Prison (HDSP), Plaintiff was evaluated by Defendant Miranda, who determined that he did not meet the requirements for referral to an orthopedic specialist. ECF No. 1 at 3-4. Even though Defendant knew of the severity of Plaintiff's medical condition because of his previous medical records and treatment, which showed problems at several areas of Plaintiff's cervical spine, Defendant needlessly delayed referring Plaintiff for an MRI and surgery, and Plaintiff suffered severe pain and immobility over the months of delay. Id. at 4. After Plaintiff finally received surgery, Defendant interfered with his pain management by starting and stopping medication and reducing his daily morphine dose. Id. at 5.

III.    Motion for Summary Judgment

A.      Defendant's Arguments

Defendant asserts that Plaintiff has failed to establish that he was deliberately indifferent. Specifically, Defendant argues that his treatment of Plaintiff prior to surgery was within the standard of care and does not rise to deliberate indifference. ECF No. 45 at 5-6. Defendant's decision to slowly progress Plaintiff's treatment by requiring physical therapy before ordering an MRI was a conservative approach to potentially avoid the risks of surgery, and Plaintiff simply disagreed with his treatment plan, which does not amount to deliberate indifference. Id. at 6. Alternatively, Defendant argues that he is entitled to qualified immunity. Id. at 6-7. With respect to the second aspect of Plaintiff's deliberate indifference claim, Defendant asserts that Plaintiff no longer contends that he was deliberately indifferent to Plaintiff's needs regarding pain management. Id. at 1.

B.      Plaintiff's Response

At the outset, the court notes that Plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Plaintiff has also failed to file a separate document disputing defendants' statement of undisputed facts, as required by Local Rule 260(b).

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation omitted).

Accordingly, the court considers the record before it in its entirety despite Plaintiff's failure to be in strict compliance with the applicable rules.  However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff opposes the motion and argues that Defendant, having reviewed his medical history, was aware of the severity of his spinal condition and nonetheless refused to refer Plaintiff to an orthopedic specialist or order a cervical MRI.  ECF No 48 at 1-2.  He further argues that it was deliberate indifference to deny him any course of treatment other than physical therapy given that his imaging results showed the worsening condition of his spine.  Id.

IV.   Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

1  stipulations (including those made for purposes of the motion only), admissions, interrogatory
2  answers, or other materials" or by showing that such materials "do not establish the absence or
3  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to
4  support the fact." Fed. R. Civ. P. 56(c)(1).

5  "Where the non-moving party bears the burden of proof at trial, the moving party need
6  only prove that there is an absence of evidence to support the non-moving party's case." Oracle
7  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).
8  Indeed, summary judgment should be entered, "after adequate time for discovery and upon
9  motion, against a party who fails to make a showing sufficient to establish the existence of an
10 element essential to that party's case, and on which that party will bear the burden of proof at
11 trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element
12 of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such
13 a circumstance, summary judgment should "be granted so long as whatever is before the district
14 court demonstrates that the standard for the entry of summary judgment, as set forth in Rule
15 56(c), is satisfied." Id.

16 If the moving party meets its initial responsibility, the burden then shifts to the opposing
17 party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.
18 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the
19 existence of this factual dispute, the opposing party may not rely upon the allegations or denials
20 of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
21 admissible discovery material, in support of its contention that the dispute exists. See Fed. R.
22 Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a
23 fact "that might affect the outcome of the suit under the governing law," and that the dispute is
24 genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving
25 party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

26 In the endeavor to establish the existence of a factual dispute, the opposing party need not
27 establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
28 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On November 6, 2020, Defendant served Plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 45-1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V.     Eighth Amendment Deliberate Indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

Deliberate indifference is a very strict standard. It is "more than mere negligence." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Even civil recklessness—failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known"—is insufficient to establish an Eighth Amendment claim. Id. at 836-37 (citation omitted). A prison official will be found liable under the Eighth Amendment when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060).

Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citing Estelle, 429 U.S. at 104-05). A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To establish a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).

VI.     Undisputed Material Facts

Plaintiff did not separately respond to Defendant's Statement of Undisputed Facts (DSUF), and the facts are therefore deemed undisputed except as otherwise discussed.

Plaintiff was transferred to HDSP on August 3, 2016, where his medical exam on arrival showed complaints of neck pain and that he was taking medications for his pain. DSUF (ECF No. 45-4) ¶ 1. Prior to arrival at HDSP, Plaintiff had been assaulted by a fellow inmate and the altercation led to CT scans of Plaintiff's spine and facial area. DSUF ¶ 2. The report for the CT

reflects that Plaintiff had "[n]o acute fracture or traumatic malalignment of the cervical spine," but had "[m]oderate multilevel degenerative changes [at C4-5, C5-6, and C6-7]" and "2 mm anterolisthesis of C3 on C4, likely chronic."[1]  ECF No. 45-2 at 13.

On August 9, 2016, a nurse examined Plaintiff and noted that he complained of chronic neck pain from an automobile accident in 1998, after which he was diagnosed with spinal issues. DSUF ¶ 3. She further noted that Plaintiff had previous refusals for physical therapy and chronic medical refusals.[2]  Id.  The record from this examination also notes that Plaintiff was diagnosed with "severe cervical spine degenerative disk disease." ECF No. 45-2 at 17.  Over the course of August and September, Plaintiff was examined by nurses on an additional three occasions where he complained of neck pain. DSUF ¶¶ 4-5; ECF No. 45-2 at 19-26.

On September 26, 2016, Plaintiff saw Defendant for chronic neck pain, and Defendant noted that Plaintiff had a prior shoulder x-ray but not a prior cervical MRI. DSUF ¶ 6. He informed Plaintiff that he was ineligible to see an orthopedic specialist or receive a cervical MRI because he had previously refused physical therapy.  Id.  The progress notes from the September 26, 2016 appointment indicate a previous cervical spine x-ray completed on September 30, 2015, which showed "moderate to severe cervical DDD." ECF No. 45-2 at 28. Defendant ordered a shoulder x-ray to determine the cause of Plaintiff's pain,[3] which took place on September 30, 2016, and physical therapy for Plaintiff's neck, which Plaintiff refused on October 12, 17, and 24, 2016. DSUF ¶¶ 7-8; ECF No. 45-2 at 29. Plaintiff refused therapy due to it causing neck pain and because he wanted to see a doctor first. Id. 34-36.

Defendant examined Plaintiff again on November 1, 2016, for complaints of neck pain, and requested a cervical MRI, which occurred on December 2, 2016. DSUF ¶¶ 9-10. The

---

[1] Defendant states the results of the spinal scan were negative, DSUF ¶ 2, while Plaintiff states that the imaging report indicates multi-level degeneration and therefore was not negative, ECF No. 48 at 1-2. Since there is no dispute as to the accuracy of the CT scan report, the court refers to the report itself (ECF No. 45-2 at 13).
[2] Plaintiff does not dispute that he had previously refused physical therapy, but argues the refusals were irrelevant because they were for his shoulder and unrelated to his spine issues. ECF No. 48 at 2. DSUF ¶ 5 is therefore undisputed.
[3] Although DSUF ¶ 7 states the referral took place on September 29, 2016, the medical records show the referral took place on September 26, 2016. ECF No. 45-2 at 31.

progress notes indicate that Plaintiff had an x-ray on June 11, 2012, that showed moderate degenerative disease and that the same moderate degenerative disease was shown on a September 30, 2015 x-ray. DSUF ¶ 9. Following the November appointment, Dr. Abdur-Rahman became Plaintiff's primary care provider and Defendant had no further interaction with Plaintiff until after his spinal surgery. ECF No. 45-2 (Miranda Declaration) at 3, ¶ 12. Plaintiff ultimately received spinal surgery on March 29, 2017. DSUF ¶ 11.

VII.   Discussion

    A.   Eighth Amendment

With regard to Plaintiff's pre-surgery treatment claim, Defendant asserts that it "was within the standard of care and [his] medical training to assess each patient's needs as they present themselves" and to take a conservative approach to treatment by starting with x-rays and physical therapy. ECF No. 45 at 6. He argues that referring Plaintiff for surgery or an MRI based on old information, particularly in light of Plaintiff's recent assault, would have been unreasonable. Id. In contrast, Plaintiff argues that Defendant's treatment ignored the severity of his condition and caused him needless pain by delaying an MRI and access to an orthopedic specialist. ECF No. 48 at 2-3. Plaintiff argues that Defendant treated him like a new medical case rather than picking up where the last treatment ended with the July 2016 CT scan. Id. at 3. He asserts that he was not requesting immediate referral to surgery, and that he believes the natural next step in his treatment would have been a referral for an MRI and that requiring him to participate in physical therapy was inappropriate, given that he had already received imaging showing cervical anomalies. Id. at 2-3.

Plaintiff's assertion that Defendant was deliberately indifferent to his spinal issues and caused him to needlessly jump through hoops for half a year is undercut by the short period of time in which Defendant was responsible for his care and the fact that Defendant provided treatment during that time. It is undisputed that Plaintiff first saw Defendant on September 26, 2016, with his last visit before surgery on November 1, 2016, after which Plaintiff received a new primary care physician; Defendant was not responsible for his care again until after the surgery took place. During the time that he treated Plaintiff, Defendant ordered x-rays and referred

1  Plaintiff to physical therapy.  Accordingly, although Plaintiff may not have agreed with the
2  course of treatment Defendant provided, the undisputed facts show that he was in fact receiving
3  treatment for his cervical spine.

4  Given that Plaintiff's medical records indicated that he had previously refused physical
5  therapy, and Plaintiff states that the past physical therapy was for unrelated issues, there is no
6  evidence that Defendant's referral for a new course of physical therapy before proceeding to other
7  treatment was duplicative of previous unsuccessful treatment as Plaintiff suggests.  Additionally,
8  given the limited time in which Defendant was responsible for Plaintiff's treatment, no evidence
9  is provided to indicate that he inappropriately delayed Plaintiff's referral for an MRI.  Although
10 Defendant referred Plaintiff to physical therapy before ordering the MRI, the records also show
11 that he ordered the MRI at Plaintiff's following visit, approximately one month after first seeing
12 Plaintiff and in the wake of Plaintiff's refusals to participate in physical therapy because it was
13 painful.  While Plaintiff argues that this was unreasonable and not within the standard of care, he
14 does not provide any evidence to show that the decision to attempt physical therapy for
15 approximately one month before ordering an MRI was medically unacceptable.  Nor does he
16 present evidence demonstrating that Defendant subjectively understood that his decision would
17 create an excessive risk of harm to plaintiff.  See Farmer, 511 U.S. at 837.

18 Plaintiff's belief that Defendant should have ordered the MRI during his first appointment
19 amounts to nothing more than a difference of opinion as to the proper treatment, see Toguchi, 391
20 F.3d at 1058, and Defendant had no further involvement in Plaintiff's treatment until after his
21 surgery.  Plaintiff has therefore failed to show that Defendant Miranda's treatment of his cervical
22 spine amounted to deliberate indifference to his medical condition.

23 With regard to Plaintiff's claim that Defendant interfered with his pain medication post-
24 surgery, Defendant has not moved for summary judgment.  Though Defendant asserts that
25 "Plaintiff is no longer contending that Miranda was deliberately indifferent to his medical needs
26 regarding his medications," ECF No. 45 at 1, the citation to Plaintiff's deposition testimony is
27 insufficient to establish dismissal of this claim and does not indicate a clear intent on behalf of
28 ////

Plaintiff to release the claim.[4] Without confirmation by Plaintiff that he intends to dismiss the claim or a stipulated dismissal of the claim, and absent grounds on which to grant summary judgment, Plaintiff's pain management claim survives.

### B. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling Saucier's requirement that the two prongs be decided sequentially). Since the facts taken in the light most favorable to Plaintiff do not show the violation of a constitutional right, it is not necessary for the court to address Defendant's qualified immunity argument.

### VIII. Plain Language Summary of this Order for a Pro Se Litigant

Defendant Miranda provided treatment for your cervical spine during the time period that he was responsible for your care and there is no evidence that Defendant's decision to send you for physical therapy was medically unacceptable. There is also no evidence that Defendant acted with the knowledge that his actions would cause you harm, and did not care. This means that you cannot prove "deliberate indifference" to your medical needs. It is being recommended that Defendant's motion for summary judgement be granted as to the claim that Defendant Miranda delayed your surgery. Since Defendant did not submit evidence to support summary judgment on

---

[4] According to the transcript, Plaintiff was asked whether he was "agreeing to drop that allegation of retaliation and only pursue the allegation that he was deliberately indifferent to your medical needs from the time you arrived at Mule Creek State Prison up until the time he did order the MRI that kind of got the ball rolling to you getting your surgery." ECF No. 45-3 at 9-10. However, Plaintiff's retaliation claim was dismissed at screening, ECF No. 17 at 2, and even if Plaintiff had clearly agreed to dismiss his medication-interference claim against Defendant, the parties should have filed a stipulated dismissal to that effect.

your claim that he interfered with your pain medication after your surgery, it is being recommended that the case proceed on that claim.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgement, ECF No. 45, be GRANTED in part and DENIED in part as follows:

    a. GRANTED as to the claim that Defendant delayed referring plaintiff for an MRI and surgery.

    b. DENIED as to the claim that Defendant interfered with Plaintiff's pain management after Plaintiff's surgery.

2. This case proceed on the claim that Defendant Miranda was deliberately indifferent by interfering with Plaintiff's pain management after Plaintiff's surgery.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **ten** days of the filing of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Due to exigencies in the court's calendar, no extensions of time will be granted.**[5]  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 22, 2021

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff is informed that in order to obtain the district judge's independent review and preserve issues for appeal, he need only identify the findings and recommendations to which he objects. There is no need to reproduce his arguments on the issues.

11